[Crim. No. 1860. Third Dist. Apr. 15, 1944.]

## THE PEOPLE, Respondent, v. WILLIAM TOTTEN, Appellant.

George E. Foote and Al. Mathews for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

ADAMS, P. J.—In an information filed by the district attorney of Nevada County, defendant was charged with the murder of one Harvey McVean on July 15, 1943. He entered pleas of not guilty and not guilty by reason of insanity. A jury found him guilty of murder of the second degree, and also found that he was sane at the time of the commission of the offense. A motion for a new trial was denied. Defendant now appeals from the judgment of imprisonment for the term provided by law, and from the order denying a new trial, contending that the evidence is insufficient to support the verdict of murder of the second degree, and that if defendant was guilty of any offense it was, at most, manslaughter.

These contentions are without merit. Considering the evidence in the light most favorable to the prosecution, as we must do on this appeal, it is ample to sustain the verdict.

Defendant was the nephew of a Mrs. Mary E. Field, a woman past eighty years of age, who lived alone in her own home in Hill's Flat near Nevada City. About a year prior to the homicide, defendant came to reside in Hill's Flat, and with his wife, Ethel, occupied a house back of his aunt's property. The decedent, Harvey McVean, lived with his wife, Mary, on property also adjoining that of Mrs. Field. The evidence shows that there was a very real friendship between the McVeans and Mrs. Field, that Mr. McVean had been very good to Mrs. Field, had helped to take care of her deceased husband during his last illness, and at one time after her husband's death had boarded with her to help her out. On the evening of July 15, 1943, just before seven o'clock, McVean, who just two days before had returned to Hill's Flat after an absence of several months, left his house, stating to his wife that he was going to see Mrs. Field whom he had not yet seen since his return. Mrs. Field testified that McVean came to the side door of her home and knocked, that she went to the door and exclaimed, "My Lord, Harvey McVean," and that at her invitation he entered; that at this point defendant Totten came into the house through the back door, "wild and shouting, 'Harvey McVean, you get out of here, you get out of here, Harvey McVean, you get out of here and stay out of here' "; that McVean said, "Mrs. Field, he has got the gun on us," and that when she turned around Totten "had the gun pointed to shoot"; that with her hand she gave him a push and he went down; that when he got up he said "I will shoot Harvey McVean and I will shoot you. I will kill the both of you"; that McVean then said he would go home and would see her later, whereupon he stepped out of the house and started back to his home; that he said nothing whatever to Totten; that the latter' went out the back door, that she followed him and locked the door and then ran to a neighbor's to call for help, and that after one call she heard a shot. She also said that she had once heard defendant say that McVean had better stay away from there and "not be monkeying around."

There were no actual witnesses to the shooting. Mrs. McVean testified that she heard the gunshot, ran toward Mrs. Field's house and saw her husband coming down the path; that he was "sort of falling" and when she reached him was lying in the grass; that she saw that he had been shot, and

that he died without speaking. She further testified that her husband was not carrying a gun or other weapon when he left home to go to Mrs. Field's, and that he had none when he died.

Dr. Jones, who was called to attend decedent, testified that he had been shot at close range—within a foot or thereabouts—with a shotgun, the charge entering the left side just over the heart. This witness, who was the county health officer, also testified that defendant Totten had called upon him several times within a few weeks prior to the date of the homicide, and complained that Mrs. Field was living in miserable conditions and that he thought she ought to be declared incompetent and removed from the property.

Carl T. Larsen, a deputy sheriff, testified that Totten came to the sheriff's office the evening of July 15, 1943, with a gun in his hand, and stated that he was in trouble and that he had shot McVean; that Totten gave him the gun and a shotgun shell and that an empty shell was found near the body of McVean. Larsen also said that Totten told him that McVean was trying to get his aunt's property and that he tried to stop him from doing so; also that he said something about McVean's trying to take the gun away from him.

William D. Woods, an undersheriff, testified that he had seen Totten about noon of July 15th, at the sheriff's office, at which time Totten wanted him to go down to Hill's Flat and make McVean stay away from his aunt; that he said McVean was trying to get her property away from her; and that he also said, ''Well, I don't want to have to shoot him.'' Mrs. McVean, who was called for the defense, stated that Totten had been at their home the morning of the 15th, at which time he had asked McVean how Mrs. Field's property was arranged; that Mr. McVean had answered that it was none of their business and he would rather not talk about it, and that Totten had said, ''I just can't do anything with that old bat.''

Totten himself testified that after he had been at the McVean home the morning of the 15th he had gone to the sheriff's office and asked the sheriff to ask McVean to stop bothering him; also that he had gone to the district attorney and told him his story. His account of the events leading up to the shooting differs in some respects from that of Mrs. Field, but the jury apparently believed her testimony. Defendant admitted the shooting, but stated that McVean was

advancing upon him and attempting to take the gun away from him. He said, "When the man reached around to grab the gun this way and take it away from me was when the climax came." He contended that he was afraid of McVean, but made no contention that decedent was armed with any sort of weapon. There was also evidence that on the morning of the 15th Totten had gone to Mrs. Field's house but had been denied admittance, and that he was angry about this matter, and blamed McVean for it.

In rebuttal the prosecution introduced in evidence a statement made by defendant to the district attorney the day after the homicide. Therein defendant stated that McVean had passed him on his way to Mrs. Field's house the evening of the shooting, and that he had followed him into the house; that he went in to put him out; that he "wasn't going to have him in there, pumping her against me so I couldn't get in to feed her"; that when he shot, McVean was "trying to push me back and I wouldn't go back." When asked why he had taken the gun with him when he went into the house he said, "I expected trouble with him."

While at the trial defendant stated that he was carrying the gun for the purpose of shooting cats that had been killing his chickens, and that before the shooting McVean threatened to do him bodily harm, the jury evidently did not accept this testimony as true.

There is no evidence that McVean had ever been other than a good friend to Mrs. Field, or that he had ever attempted to influence her against defendant, or as to the disposition of her property. Defendant's testimony created only a conflict in the evidence. Its verity was for the jury, and in such case an appellate court will not interfere with its verdict or the order of the trial court denying a new trial. See *People* v. *Frank*, 60 Cal.App.2d 802, 805 [141 P.2d 780], and cases there cited.

We find no merit in appellant's contention that if he is guilty of any offense it would at most be manslaughter. The latter defense is defined as the unlawful killing of a human being, without malice, and is of two kinds: voluntary—upon a sudden quarrel or heat of passion; and involuntary—in the commission of an unlawful act, not amounting to felony, or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection. (Pen. Code, § 192.) The jury in this case

were fully justified in their conclusion that the killing of McVean was not "without malice," and they might well have concluded that it was wilful, deliberate and premeditated.

The judgment and the order denying a new trial are affirmed.

Peek, J., and Thompson, J., concurred.